**STATE of Minnesota, By Edward POWDERLY et al., Plaintiffs,**

**Maxine Pflueger, Appellant,**

**Friends of History, Inc., Intervenor,**

v.

**Claire ERICKSON et al, Respondents,**

**City of Red Wing, Respondent,**

**John Doe et al, Respondents.**

**No. 51155.**

Supreme Court of Minnesota.

Jan. 20, 1981.

Rehearing Denied Feb. 17, 1981.

of Minnesota and Minnesota Historical Society; Charles Skrief, Minnesota Historical Society, St. Paul, of counsel.

OTIS, Justice.

The subject of this protracted litigation is the proposed demolition of two historic row houses in Red Wing. In the first appeal, *State, by Powderly v. Erickson*, 285 N.W.2d 84 (Minn.1979), this court found that the row houses were an historical resource within the meaning of the Minnesota Environmental Rights Act (MERA), Minn.Stat. §§ 116B.01–.13 (1980), that defendants Erickson and Erickson Diversified Corporation (hereinafter Erickson) did not sustain their burden of rebutting plaintiff's prima facie case, and that enjoining destruction of the row houses would not result in an unconstitutional "taking" of property without just compensation. We remanded the case for issuance of a permanent injunction.

Upon remand, the district court filed an order on October 22, 1979, permanently enjoining demolition of the row houses. Subsequently, in response to Erickson's motion, and after a hearing on the matter, the district court on January 7, 1980, issued an order amending its original injunction. The amended injunction stated "If any defendant, after March 31, 1980, upon motion, demonstrates by competent evidence that the row houses have not been sold, renovated or acquired by eminent domain, said injunction shall be dissolved and demolition shall be permitted." Shortly after the entry of the district court's order, plaintiffs filed a notice of appeal and, in the alternative, a petition for a writ of prohibition. On February 14, 1980, this court denied the petition for a writ of prohibition. The district court held a hearing on April 14, 1980, in response to Erickson's motion to remove the permanent injunction and on April 22, 1980, this court stayed all lower court proceedings. We reverse the order of January 7, 1980, and remand for further proceedings consistent with the views we here express.

Donald J. Heffernan, Minneapolis, for appellant.

Grossman, Karlins, Siegel & Brill, J. E. Brill, Jr., and Thomas H. Goodman, Minneapolis, for Claire Erickson & Erickson Diversified Corp.

Patrick Costello, City Atty., Red Wing, for The City of Red Wing.

Warren Spannaus, Atty. Gen., and Richard B. Allyn, Chief Deputy Atty. Gen., St. Paul, amici curiae for State of Minnesota and Minnesota Historical Society.

Leonard, Street & Deinard and Byron E. Starns, Special Atty., Minneapolis, for State

The history of this case and of the historic buildings at the heart of the controversy was detailed in our prior opinion. At issue in the present appeal is whether the district court adhered to our instructions on remand; whether there has been a sufficient passage of time and change in circumstances to merit alteration of the relief we originally granted; and whether there are adequate remedies available to effectuate the purposes and implement the policies enunciated by the Minnesota Environmental Rights Act, the Historical Sites Act, and the Municipal Heritage Preservation Act.[1]

■ 1. In the present posture of this case the courts are presented with a serious dilemma difficult of resolution. On the one hand, the legislature has mandated that courts exercise their common law and equitable jurisdiction to grant whatever remedies are necessary and appropriate to protect historical resources from destruction. Minn.Stat. § 116B.07, .12 (1980). "It is in the public interest to provide for the preservation of historic sites, buildings, structures, and antiquities of state and national significance for the inspiration, use, and benefit of the people of the state." Minn.Stat. § 138.-51 (1980).

■ On the other hand, the legislature has failed to provide the machinery for preserving historic buildings such as these row houses other than to prohibit their destruction by the owners. We indicated in our prior decision that the owners could not be forced to renovate their property, nor could they be enjoined indefinitely from demolishing the buildings if no other solution could be reached, citing *People v. Ramsey*, 28 Ill.App.2d 252, 171 N.E.2d 246 (1960). To permanently deny an owner the beneficial use of his property except by requiring him to make a substantial investment in repairs and renovation, over his objection, would constitute a "taking" for which the owner has a right to compensation. Accordingly in our previous opinion we strongly recommended that "the relevant legisla-

tive or administrative bodies initiate condemnation proceedings with regard to these buildings within a reasonable period of time."

The response of the City Council of the City of Red Wing on February 25, 1980, was to unanimously defeat a resolution, introduced by the Chairman of the Heritage Preservation Commission, to acquire the row houses by eminent domain.

Thus, as matters now stand, the city and the Ericksons have rebuffed all proposals to acquire, renovate, and preserve the row houses. The Ericksons are on record as stating that the property was purchased in 1964 for the purpose of enlarging their parking lot to accommodate ten cars; that renovation is economically unfeasible; that they have never received an offer to purchase; and that "the corporation intends to hold such property indefinitely and will neither renovate nor sell such property."

2. There is evidence that a number of responsible developers have made overtures to the Ericksons for the avowed purpose of restoring and repairing the houses for occupancy, with the expectation of a reasonable rate of return on their investment. The Ericksons have exercised their right to refuse to negotiate. If this stalemate is to come to an end, as it must, a remedy needs to be fashioned by either the courts or the legislature which will accord the owners their constitutional right to be compensated for their property, and at the same time establish procedures for determining value and funding the purchase.

Thus, several states have adopted statutes which would correct the problem with which we are here dealing. Connecticut and Alaska, in particular, have given their environmental agencies the power of eminent domain to acquire protected but endangered lands, including historic sites.[2]

■ 3. We are, therefore, of the opinion and hold that the injunction which we directed the trial court to issue in our prior decision, *State, by Powderly v. Erickson*, 285 N.W.2d 84 (Minn.1979), remains in full

---

1. Minn.Stat. §§ 116B.01–.13, 138.51–.63, 471.-193 (1980).

2. *See* Alaska Stat. § 41.35.060 (1977); Conn. Gen.Stat. § 22a–25 (1979).

force and effect to prohibit the demolition of the row houses owned by respondents Erickson in the City of Red Wing, until such time as the present Minnesota legislature has had an opportunity to address the problems surfaced by this litigation.[3] In the event the legislature takes no corrective measures at this session, respondents may apply to the trial court for an order dissolving the injunction, unless by that time appellants have been able to propose and implement some other remedy appropriate to the equitable jurisdiction of the court.

4. The continuation of the injunction below is conditioned, however, on the posting of a bond by appellants in the sum of $20,000, within 30 days hereof, to indemnify the respondents for any damages they may hereafter suffer as a result of further delay in concluding this litigation.

Reversed and remanded with instructions.

---

**3.** Where, as here, no municipal or other governmental entity elects to apply public funds for the preservation of historic resources, but there are or may be, concerned citizens or civic organizations with the ability and desire to restore such properties at their own expense, it would seem to further the purposes of Minn. Stat. § 138.51 (1980) for the legislature to authorize specified units of government, such as the Department of Natural Resources, to obtain such property by eminent domain on condition that those who have agreed to compensate the owners use the property so as to preserve its historic character. *See Port Auth. v. Groppoli,* 295 Minn. 1, 202 N.W.2d 371 (1972); *Housing & Redevelopment Auth. v. Coleman's Serv. Inc.,* 281 Minn. 63, 160 N.W.2d 266 (1968); *Housing & Redevelopment Auth. v. Greenman,* 255 Minn. 396, 96 N.W.2d 673 (1959).