**Sandra (Fyllesvold) BLOOM, Plaintiff and Appellee,**

v.

**Dwight FYLLESVOLD, Defendant and Appellant.**

**Civ. No. 870167.**

Supreme Court of North Dakota.

Feb. 25, 1988.

---

Sandra Bloom, pro se. No appearance.

John Charles Skowronek (argued), Minot, for defendant and appellant.

Mary Norum Hoberg (argued), Sp. Asst. Atty. Gen., Bismarck, for amicus curiae N.D. Dept. of Human Services.

LEVINE, Justice.

Dwight Fyllesvold appeals from a district court order modifying Sandra Bloom's child support obligation. We affirm.

Dwight and Sandra were divorced in November 1982. Pursuant to a stipulation, Dwight was awarded custody of their three minor children and Sandra was ordered to pay monthly child support of $225. In April 1984 the court temporarily reduced Sandra's monthly support obligation to $100 with the remaining $125 continuing to

accrue as an arrearage. Thereafter, Sandra became delinquent on her support payments and on April 27, 1987 the clerk of court issued income withholding orders to Sandra's two employers.[1]

On May 2, 1987 Sandra[2] sent a letter to the clerk of court requesting a "hearing to contest the income withholding order" and to show that the amount withheld would be a hardship for her. She was referred to Referee Bill Blore for the procedures to be followed. The record does not reflect whether she contacted Blore but on May 20, 1987 she wrote a letter to the district court judge requesting a hearing to seek a permanent reduction in child support and to show that taking fifty per cent of her wages would be a hardship. Dwight admits that he received a certified copy of that letter.

On May 26, 1987 the judge informed Sandra that, in order to obtain a permanent reduction in child support, she would have to obtain a hearing date and serve a motion and notice of motion upon Dwight. After obtaining a hearing date for June 15, 1987, Sandra sent another letter to the district court on June 3, 1987, stating that the hearing was set for June 15th and that she was "requesting that the amount [of child support] be reduced permanently to $100.00 per month" and that taking fifty per cent of her wages would be a hardship for her. Dwight admits that he received a certified copy of that letter.

At the hearing the court announced that Sandra's motion sought "a reduction in child support occasioned by a change in financial circumstances since the entry of the judgment." The court found that Sandra's current earnings were two-thirds less than when she stipulated to pay $225 a month and reduced her child support obligation to $75 per month.

■ Dwight contends that the trial court failed to comply with N.D.C.C. § 14–09–09.14[3] because it combined a hearing on a motion for a permanent reduction in child support with a hearing to contest an income withholding order. Dwight's argument assumes that the June 15 hearing was in fact a hearing to contest an income withholding order. We disagree.

N.D.C.C. § 14–09–09.14 provides:

*"14–09–09.14. Hearing upon obligor's request.*

"1. If the obligor files a request for a hearing within ten days of the date of the notice made pursuant to section

---

1. Each income withholding order required the respective employer to withhold $270 from Sandra's paycheck with the caveat that the amount that each employer withheld could not exceed 50% of her disposable income.

2. Sandra appeared pro se throughout the instant proceeding.

3. N.D.C.C. § 14–09–09.14 is part of the statutory scheme for income withholding orders, N.D.C.C. §§ 14–09–09.3 and 14–09–09.10 through 14–09–09.23, and was initially enacted by the Legislature during its special session in December 1986 and became effective March 1, 1987. 1987 N.D. Sess.Laws Ch. 183. Further amendments were made during the 1987 regular session and became effective March 23, 1987. 1987 N.D.Sess. Laws Ch. 181. These statutory provisions were enacted to require mandatory income withholding of a delinquent child support obligor's income and to bring North Dakota into compliance with congressional requirements of 42 U.S. C. §§ 651–667, the Child Support Enforcement Amendments of 1984 [CSEA], for the receipt of federal monies for Aid to Families with Dependent Children [AFDC]. *See* December 3 and 4, 1986 Minutes of House and Senate Select Committee on Social Services and Veterans Affairs regarding House Bill 1903; January 29, 1987 Minutes of Human Services and Veterans Affairs Committee of Senate regarding Senate Bill 2432; March 6, 1987 Minutes of Human Services and Veterans Affairs Committee regarding Senate Bill 2432.

N.D.C.C. § 14–09–09.10, defines several terms used throughout the income withholding provisions, including "delinquent," "income payor," "disposable income," "obligee," and "obligor." The statutory scheme for income withholding authorizes a judgment or order requiring the payment of child support to be enforced by an income withholding order in addition to any other remedies provided by law. N.D.C.C. §§ 14–09–09.11; 14–09–09.13. Whenever an obligor becomes delinquent, the clerk of court is required to serve the obligor with the notice prescribed by N.D.C.C. § 14–09–09.13. The obligor may thereafter contest the issuance of an income withholding order by filing a written request for a court hearing within ten days. N.D.C.C. §§ 14–09–09.13(6); 14–09–09.14(1). A hearing to contest an income withholding order must be held within ten days of the obligor's request. N.D.C.C. § 14–09–09.14(1).

14-09-09.13, the court shall hold a hearing within ten working days after the date of the request. If at the hearing the obligor establishes that there has been a mistake in the identity of the obligor, the court may order that no income withholding order issue. If at the hearing the obligor establishes that there is an overstatement in the amount of support stated to be owed by the obligor, the court may amend the amount to be withheld. In the absence of a finding of a mistake of fact, the court shall order that the income withholding order issue. Payment of overdue support after issuance of notice under section 14-09-09.13 may not be the basis for an order that no income withholding order issue.

"2. An obligor is not precluded, by subsection 1, from seeking appropriate relief from a judgment or order affecting a child support obligation nor is the court precluded from granting such relief. An obligor's request for such relief, whether made by motion under Rule 60(b) of the North Dakota Rules of Civil Procedure or otherwise, may not be considered during the hearing described in subsection 1."

In construing that provision, we first examine the statutory language as a whole to determine the intent of the Legislature because that intent is presumed clear from the face of the statute. *E.g., County of Stutsman v. State Historical Society of North Dakota,* 371 N.W.2d 321 (N.D.1985).

N.D.C.C. § 14-09-09.14(1) clearly limits the scope of a hearing to contest the issuance of an income withholding order to a determination of whether there was a "mistake of fact." In the absence of a mistake of fact, the court must order issuance of the income withholding order. Under N.D. C.C. § 14-09-09.14(2), the court may not consider an obligor's request for relief from a judgment or order "affecting a child support obligation," during a withholding hearing. N.D.C.C. § 14-09-09.14 thus dis-

tinguishes between a hearing to "contest the issuance of the income withholding order" (withholding hearing) and a hearing to seek "appropriate relief from a judgment or order affecting a child support obligation" (modification hearing). In a withholding hearing the court may deny the issuance of an income withholding order only if there has been a mistake of fact as to the identity of the obligor or an overstatement in the calculation of the amount of support stated to be owed. In a modification hearing any issue relevant to the underlying child support obligation may be addressed.

The hearing in this case was not held within the ten-day requirement of N.D.C.C. § 14-09-09.14(1). Nor did it involve mistakes of fact germane to a withholding hearing. Sandra did not contend that there was a mistake in the identity of the obligor or that there was an overstatement in the calculation of the amount of support stated to be owed by her. The relief Sandra sought could not have been granted via a withholding hearing. Her June 3rd letter indicated that she was seeking a permanent reduction of child support and that taking fifty per cent of her wages would be a hardship for her. At the outset of the hearing, the trial court took into account the relief requested by Sandra and determined that the hearing was on a motion "for a reduction in child support occasioned by a change in financial circumstances since the entry of the judgment." It was Dwight, not Sandra, who injected into the hearing references to the income withholding order. We conclude that the hearing was on an "order affecting a child support obligation," and the trial court did not combine a withholding hearing with a modification hearing.[4]

■ An interrelated issue involves Dwight's argument that Sandra did not give him proper notice of the scope of the June 15th hearing.

■ In *Vande Hoven v. Vande Hoven,* 399 N.W.2d 855 (N.D.1987), we recognized

4. Because of our resolution of this issue, we do not address whether an obligee is entitled to

notice as a condition for the obligor to contest the issuance of an income withholding order.

that the primary purpose of procedural rules governing motions is to inform the adversary of the nature of the claim being asserted and the relief demanded. A notice of motion and motion are sufficient if the motion and attached papers and records are sufficiently precise to advise both the adversary and the court of the question involved. *Eisenbarth v. Eisenbarth*, 91 N.W.2d 186 (N.D.1958). In *Eisenbarth, supra*, 91 N.W.2d at 188, we concluded that a notice of motion was sufficient for the court to modify child support where the notice sought "an order modifying the judgment by making the defendant pay the second mortgage and 'for such other relief as to the court may seem just and equitable.'"

While Sandra's compliance with motion practice was at best approximate, we believe that her June 3rd letter was sufficiently precise and complete to advise Dwight and the trial court of the nature of her claim and the relief requested. *Vande Hoven, supra; Eisenbarth, supra*. Dwight appeared at the hearing with counsel and did not object to either notice or the trial court's characterization of the nature of the hearing. Nor did Dwight ask for a continuance on the merits of the permanent reduction in child support. Under these circumstances, we conclude that Dwight received adequate notice of the scope of the June 15th hearing.

■ Dwight also contends that the trial court erred in permanently reducing Sandra's child support obligation from $225 to $75 per month.

A trial court may modify an award of child support when a material change in financial circumstances is demonstrated. *E.g. Burrell v. Burrell*, 359 N.W.2d 381 (N.D.1985). A change in financial circumstances by itself is not sufficient to modify child support without further inquiry about the cause of the change, including whether the change was permanent or temporary and whether it was due to a voluntary act or neglect on the part of the obligor. *Cook v. Cook*, 364 N.W.2d 74 (N.D.1985); *Burrell v. Burrell, supra; Hoster v. Hoster*, 216 N.W.2d 698 (N.D.1974). A trial court's

determination on modification of child support is subject to the "clearly erroneous" standard of N.D.R.Civ.P. 52(a). *Burrell v. Burrell, supra*. A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

The trial court found that Sandra was currently earning two-thirds less than when the original judgment was entered and reduced her child support obligation from $225 per month to $75 per month. When the divorce was granted Sandra was earning about $15,000 per year managing a pizza parlor. She testified that that job required her to work about seventy hours per week while she was under a doctor's care for "chemical depression" and that she quit because of the "pressure" and her belief that she was not doing the job properly. She further testified that she had subsequently applied for several comparable jobs but was currently working as a waitress in Wisconsin for about $5,000 a year because she was unable to obtain employment at her previous salary. Sandra's reduction in income is thus neither voluntary nor temporary. *Compare Burrell v. Burrell, supra*. Therefore, we are not left with a definite and firm conviction that the trial court made a mistake in modifying Sandra's support obligation. We conclude that the trial court's findings are not clearly erroneous.

■ Dwight also contends that the trial court ordered that Sandra pay nothing toward her arrearages and that such an order abrogates the intent of the income withholding provisions.

The amount of income withheld by an income payor may not exceed fifty percent of the obligor's disposable income. N.D.C.C. § 14–09–09.16(3). N.D.C.C. § 14–09–09.13(3) sets out a two-pronged arithmetic formula for the clerk of court to compute the amount of income to be withheld by an income payor:

"The total amount of money that will be withheld ... is the sum of both of the following:

"a.  The obligor's current monthly support obligation.

"b.  The amount the obligor is ordered to pay toward any outstanding arrearage, or if no order exists, then an amount equal to twenty percent of the obligor's current support obligation for application towards any arrearage subject to the limitations of section 14–09–09.16."

N.D.C.C. § 14–09–09.13(3) authorizes the clerk of court to issue an income withholding order based upon the amount of the obligor's current monthly support obligation plus the amount the obligor is ordered to pay toward any outstanding arrearage, or if no arrearage order exists, an amount equal to twenty percent of the obligor's current support obligation. N.D.C.C. § 14–09–09.13(3)(b) authorizes a court to either: (1) say nothing about arrearages, in which case the statutory scheme is implemented and the amount to be withheld for arrearages is twenty percent of the obligor's current support obligation, or (2) specifically order an amount to be applied toward liquidation of arrearages.

In this case, the trial court stated in its written order:

"The Court after having heard the testimony does reduce the obligation of child support to Seventy-five Dollars ($75.00) per month. The Plaintiff is making two-thirds less money now than at the time she obligated herself to make the payment of Two Hundred and twenty-five Dollars ($225.00).

"The Court determines that the Motion brought by the Plaintiff was one seeking a permanent reduction in child support and one not for relief from an income withholding order, however implicit in this permanent reduction of child support payment is that any wage withholding order shall be no greater than twenty percent (20%) of the Plaintiff's child support obligation and the sum to be withheld will be Fifteen Dollars ($15.00) per month."

We do not believe that this language, read in its entirety, orders that nothing be withheld for arrearages. Rather, it indicates that the trial court first permanently reduced Sandra's current support obligation to $75 per month and then acknowledged the statutory formula for computing the amount for arrearages and incorporated into its order the amount determinable from that formula. According to the trial court's written order and the formula in N.D.C.C. § 14–09–09.13(3), the calculation of the amount to be withheld in any wage withholding order is $75 for Sandra's current support obligation [N.D.C.C. § 14–09–09.13(3)(a) ] plus twenty percent of that current obligation ($15) [N.D.C.C. § 14–09–09.13(3)(b) ] for a total of $90. While the trial court made oral comments which may be read to contradict its written order,[5] the written order prevails when a discrepancy exists. *See Federal Land Bank of St. Paul v. Lillehaugen*, 404 N.W. 2d 452 (N.D.1987). We therefore conclude that the trial court ordered Sandra to pay $75 for current support plus $15 based upon the statutory formula for arrearages.[6]

The district court order is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

**5.**  The trial court made the following oral statements:

"I am going to order that $75 a month is what she is obligated to pay and there will be no order toward arrearages at this time. I just feel that would be counterproductive, if I were to order anything on top of that $75."

**6.**  Because of our resolution of this issue, we do not decide whether a trial court can order that an obligor pay nothing toward arrearages.