Roxanne COLLINS, Plaintiff
and Appellant,

v.

Larry S. COLLINS, Defendant
and Appellee.

Civ. No. 920246.

Supreme Court of North Dakota.

Jan. 22, 1993.

Philip D. Papineau (argued), Asst. State's Atty., Minot, for plaintiff and appellant.

Eaton, Van de Streek & Ward, Minot, for defendant and appellee, argued by Michael Ward.

MESCHKE, Justice.

We hold that the trial court erroneously modified the judgment of another state that was filed in this state for interstate income withholding to enforce monthly payment of child support. We hold also that the trial court erroneously denied interstate income withholding to enforce the judgment.

On April 23, 1992, the Minot Regional Child Support Enforcement Unit received a request from the State of Nevada to initiate withholding of current child support, plus an amount for arrears, from the income of Larry S. Collins. The request sought enforcement of a Nevada judgment, dated August 8, 1991, that ordered Larry to pay $350 monthly for support of his child, Kevin, and that had an arrearage of $1,783.62 in March 1992.

After verifying that the material designated by NDCC 14–09–09.19 [1] accompanied it, the Minot Regional Unit filed the support judgment and documentation with the Clerk of the District Court for Ward County to initiate interstate income withholding. On May 4, 1992, the Clerk sent a Notice to Obligor of Income Withholding to Larry, notifying him that income withholding had been requested by Nevada, and that he had a right to request a hearing within ten days. *See* NDCC 14–09–09.20 [2] and NDCC 14–09–09.13(6).[3] On May 14, 1992, the Clerk issued an Income Withholding Order to Larry's employer, the Minot Elks Club, directing withholding of $420 per month from Larry's income, not to exceed 50% of his disposable income, for support of his child.

Also on May 14, 1992, Larry moved to oppose income withholding and to reduce

---

1. NDCC 14–09–09.19 says:

   *Interstate income withholding—Duties of the public authority upon receipt of request from another state.*
   1. Upon receipt of a support order of another state with the documentation specified in subsection 2 from a child support agency of another state, the public authority shall file the order and documentation with a clerk of district court of any county in which the obligor resides or derives income.
   2. All of the following documentation is required for the filing of a support order of another state for issuance of an income withholding order:
      a. A certified copy of the support order with all modifications.
      b. A certified copy of an income withholding order, if any, in effect.
      c. A copy of the portion of the income withholding statute of the state which issued the support order which states the requirements for obtaining income withholding under the law of that jurisdiction.
      d. A sworn statement of the obligee or assignee of the obligee or a certified statement of the clerk of court of the arrearages, if any, the obligee's approved request for withholding, if such a request has been made and approved, a certified statement that the circumstances in the case require immediate withholding under the laws of the state filing the support order, and any assignment of support rights.
      e. The name, address, and social security number of the obligor, if known.
      f. The name and address of the employer or other income payor of the obligor upon whom the income withholding order is to be served.

   g. The name and address of the agency or person to whom the payments collected by income withholding are to be transmitted.

2. NDCC 14–09–09.20 says:

   *Interstate income withholding—Notice to obligor.* Upon filing of the documentation required by section 14–09–09.19, the clerk of court shall serve a notice and a copy of this chapter on the obligor by first-class mail at the obligor's last known address. The notice must state that an income withholding order has been requested by another state. The notice must further include the information, if available, required under subsections 2 through 6 of section 14–09–09.13.

3. The relevant part of NDCC 14–09–09.13 says:

   *Procedure—Notice to obligor.* If immediate income withholding under section 14–09–09.24 has not been implemented and an obligor is delinquent, if an obligee's request for income withholding is approved, or if a court changes its finding that there is good cause not to require immediate income withholding, the clerk of court shall serve a notice and a copy of this chapter on the obligor by first-class mail. The notice must be sent within five working days of the appropriate date under subsection 7 if the obligor's address is known to the clerk on that date or, if the address is unknown on that date, within five working days after the clerk is informed of the obligor's address. The notice must state:

   \*　　\*　　\*　　\*　　\*　　\*

   6. That the obligor may contest the issuance of the income withholding order by filing a written request for hearing within ten days of the date of the notice made under this section.

his child support obligation to $168 per month to conform to North Dakota child support guidelines for his net monthly income of "approximately $800.00." *See* NDAC 75–02–04.1–10. Larry notified the child's mother, Roxanne Collins, in Nevada, and the Family Support Division of the District Attorney's Office in Las Vegas, Nevada, that his motion would be heard on June 15, 1992. No notice of hearing was given to the Minot Regional Unit. After filing of Larry's motion in the Clerk's office, the Clerk notified the Minot Elks Club that the Income Withholding Order "is currently stayed" and that "you are to discontinue ... income withholding ... until further notice."

The Minot Regional Unit then discovered that Larry was no longer employed by the Minot Elks Club, but instead was employed by the Safari Inn in Minot. At the Unit's instigation, on June 4, 1992, the Clerk issued another Income Withholding Order to the Safari Inn directing withholding of $420 per month from Larry's income, not to exceed 50% of his disposable income, for support of his child.

On June 15, 1992, without opposition to Larry's motion, the trial court ordered that his support obligation be reduced to $168, and that Nevada's request for income withholding be denied. The Minot Regional Unit learned of Larry's motion when it received this order from the Clerk.

On June 22, the Minot Regional Unit moved to vacate the modification and to reinstate income withholding. The Unit's supporting brief argued that no notice of Larry's motion had been given to the Unit, as required by NDCC 14–09–09.26(3) [4] that designates the state as the real party in interest to enforce a support order of another state; that the court had no jurisdiction to modify the support judgment under NDCC 14–09–09.21; [5] and that income withholding should be reinstated. Larry's counsel resisted with an NDROC 3.2 brief. On July 9, the district court denied, without explanation, the Unit's motion to vacate the modification and to reinstate income withholding.

The Minot Regional Unit appeals, arguing that the district court erred in granting

---

**4.** NDCC 14–09–09.26 says:

*State is real party in interest.* The state is a real party in interest for purposes of establishing paternity and securing repayment of benefits paid, future support, and costs in action brought to establish, modify, or enforce an order for support of a child in any of the following circumstances:

1. Whenever aid under chapter 50–09 or 50–24.1 is provided to a dependent child.

2. Whenever application is made and accepted under section 14–09–08.9 or 14–09–08.13.

3. Whenever a support order of another state is received with the documentation required by subsection 2 of section 14–09–09.19.

4. Whenever duties are imposed on the state or its public officials under chapter 14–12.1.

**5.** NDCC 14–09–09.21 says:

*Interstate income withholding—Hearing upon request of obligor.* If the obligor files a request for hearing within ten days of the date of the notice made pursuant to section 14–09–09.20, the court shall hold a hearing within ten working days of the date of the request. At the hearing contesting the proposed income withholding order, the documentation filed with the court, pursuant to section 14–09–09.19, constitutes prima facie proof, with-

out further proof or foundation, that the support order is valid, that the amount of current payments and arrearages, if any, is as stated, that a request for withholding by an obligee has been made and approved, or that the circumstances of the case require immediate withholding under the laws of the state filing the support order; and that the obligee would be entitled to income withholding under the law of the state which issued the support order. If, at the hearing, the obligor establishes that there has been a mistake in the identity of the obligor, an overstatement of the amount of support stated to be owed by the obligor, that the obligee's request for withholding was not an approvable request under the laws of the approving state or that the circumstances of the case do not require immediate withholding under the laws of the state filing the support order, the court may order that no income withholding order issue. In the absence of a finding of mistake of fact, the court shall order that the income withholding order issue. Payment of overdue support after issuance of notice under section 14–09–09.20 may not be the basis for an order that no income withholding order issue. *Issuance of an income withholding order does not confer jurisdiction on the courts of this state for any purpose other than issuance and enforcement of income withholding orders.* (Emphasis supplied).

Larry's motion "in the absence of service of the motion on the State of North Dakota," in modifying another state's support judgment filed in this state "only for the purpose of interstate income withholding," and in denying income withholding. Larry's counsel responds that Larry "has moved on and he is no longer in North Dakota," that "I am currently unable to locate my client," and that "the entire issue appears to be moot." The Unit argues that the case is not moot because the trial court's order will preclude income withholding for the support of Larry's child if Larry returns.

■ For several reasons, we conclude that this appeal is not moot. These are important questions about public administration of income withholding to enforce judgments for child support. *See Pelkey v. City of Fargo,* 453 N.W.2d 801 (N.D.1990). These questions are capable of repetition, and will otherwise evade review when an obligor quits his job or leaves to evade income withholding for child support.[6] *See North Dakota Council of School Adm'rs v. Sinner,* 458 N.W.2d 280 (N.D.1990); *Walker v. Schneider,* 477 N.W.2d 167, 169 (N.D.1991). If Larry returns to North Dakota, this order would improperly impede withholding from his income to enforce support for his child.

■ The Minot Regional Unit argues that the trial court's reduction of support and denial of income withholding must be reversed "because there was no proper notice given to [it as] a necessary party." The Unit cites the declaration in NDCC 14-09-09.26 that the state is the real party in interest to enforce an interstate judgment for support of a child. *See* n. 4, *ante.* The Unit quotes our statement in *McWethy v. McWethy,* 366 N.W.2d 796, 798 (N.D.1985): "Judicial decision on motion of one party,

without notice to and opportunity to be heard by the other party, is contrary to fundamental principles of justice and due process...." Both are correct statements, but they do not require reversal here.

That the Minot Regional Unit was not notified of Larry's motion is understandable. Neither the Notice to Obligor of Income Withholding nor the Income Withholding Order, both served on Larry, stated the name or address of the Unit, or those of its attorney. NDRCivP 11 directs that "[e]very pleading of a party represented by an attorney must be signed by at least one attorney of record ... whose address must be stated." *See also* NDRCivP 4(c)(1) (A summons must be "subscribed by the plaintiff or the plaintiff's attorney, and include the post office address of the plaintiff or plaintiff's attorney."). Since Larry and his counsel were not apprised of the Unit's role as our procedural rules require, Larry cannot be faulted for failing to notify the Unit or its attorney about his motion or the scheduled hearing. Larry did notify those parties whose names and addresses were shown. Moreover, the trial court reconsidered Larry's motion after the Unit moved to vacate the order. *See GeoStar Corporation v. Parkway Petroleum, Inc.,* 495 N.W.2d 61, 65 (N.D.1993) (Because of "the court's reconsideration of its findings and decision after a hearing, a new trial is not necessitated, nor is reversal of the judgment appropriate."). Due process does not necessitate vacation of the trial court's order.

Mandatory withholding for child support from the income of a delinquent obligor was begun by an enactment at a special session of the Legislature in December 1986. 1987 ND Laws, ch. 183. The impetus was compliance with a congressional

---

**6.** Recent Congressional action may deter the frequency of this kind of evasion. The Child Support Recovery Act of 1992, popularly labeled the "Dead-beat Dads Law," and signed by President Bush on October 25, 1992, criminalizes "flight to avoid payment of arrearages in child support." Pub.L. No. 102–521, § 2, 106 Stat. 3403 (1992). The law applies to a parent who "willfully fails to pay a past due support obligation with respect to a child who resides in

another state." *Id.* The statute defines "past due support obligation" as any amount "that has remained unpaid for a period longer than one year, or is greater than $5,000." *Id.* Upon conviction, the law requires the court to order restitution "in an amount equal to the past due support obligation as it exists at the time of sentencing." *Id.* Compliance with court-ordered child support can be made a condition of probation. *Id.* at § 3.

mandate in the Child Support Enforcement Amendments of 1984 to the federal Aid to Families with Dependent Children act. 42 USC §§ 651–667. We described the mechanics of this remedy in *Bloom v. Fyllesvold*, 420 N.W.2d 327, 329, n. 3 (N.D.1988):

> The statutory scheme for income withholding authorizes a judgment or order requiring the payment of child support to be enforced by an income withholding order in addition to any other remedies provided by law. N.D.C.C. §§ 14–09–09.-11; 14–09–09.13. Whenever an obligor becomes delinquent, the clerk of court is required to serve the obligor with the notice prescribed by N.D.C.C. § 14–09–09.13. The obligor may thereafter contest the issuance of an income withholding order by filing a written request for a court hearing within ten days. N.D.C.C. §§ 14–09–09.13(6); 14–09–09.-14(1). A hearing to contest an income withholding order must be held within ten days of the obligor's request. N.D.C.C. § 14–09–09.14(1).

Interstate recourse to this remedy was included. 1987 ND Laws, ch. 183, §§ 9–13; NDCC 14–09–09.18 through –09.22. Under NDCC 14–09–09.3, an employer must comply with an income withholding order, and the employer's duty can be enforced by contempt, personal liability, and damages for any retaliatory conduct against an employee subjected to withholding.

The Minot Regional Unit argues that these statutes do not authorize judicial interference with income withholding, but only authorize a court hearing for narrowly defined purposes. A support obligor is entitled to a prompt hearing when income withholding is begun, but the scope of that hearing is restrained by law. The questions are limited to "mistakes of fact":

> If, at the hearing, the obligor establishes that there has been a mistake in the identity of the obligor, an overstatement of the amount of support stated to be owed by the obligor, that the obligee's request for withholding was not an approvable request under the laws of the approving state or that the circumstances of the case do not require immediate withholding under the laws of the

state filing the support order, the court may order that no income withholding order issue. In the absence of a finding of mistake of fact, the court shall order that the income withholding order issue.

NDCC 14–09–09.21 (part; for the complete text, *see* n. 5). The Unit urges that the closing sentence of NDCC 14–09–09.21 confines the trial court's power to those enumerated mistakes of fact: "Issuance of an income withholding order does not confer jurisdiction on the courts of this state for any purpose other than issuance and enforcement of income withholding orders."

■ A trial court has no generalized power to change the amount of withholding or to forestall withholding to enforce another state's order for child support unless there is one of the enumerated mistakes of fact. *Compare Guthmiller v. Dep't of Human Services*, 421 N.W.2d 469 (N.D. 1988) (Enforcing agency is not required to obtain a separate judicial determination of amount of child support arrearages before intercepting either state or federal tax refunds). We agree that the trial court went beyond the scope of the hearing authorized to begin income withholding for support of a child.

A child support obligor may also demonstrate "good cause not to require immediate income withholding." NDCC 14–09–09.24. However, in this context, "good cause" is also narrowly defined; it "must be based on at least":

a. A written determination that, and an explanation of why, implementing immediate income withholding would not be in the best interests of the child;

b. Proof of timely payment of previously ordered support; and

c. Requirement that the obligor keep the clerk informed of the name and address of each of the obligor's current and future income payors and of any employment-related health insurance to which the obligor has access.

*Id.* at subsection 3. Since he was badly in arrears, Larry could not show "good cause" to avoid withholding, and the trial court used no such reason to reduce Lar-

ry's support obligation or to deny income withholding.

There may be other procedures for a court of this state to temporarily adjust payments on another state's support judgment. The Minot Regional Unit suggests that it may be possible in a separate proceeding such as one under NDCC ch. 14-12.1, the Revised Uniform Reciprocal Enforcement of Support Act, [*see* NDCC 14-12.1-24,[7] and *Coogan v. Fennell,* 379 N.W.2d 791 (N.D.1985)], or under NDCC ch. 28-20.1, the Uniform Enforcement of Foreign Judgments Act, [*see* NDCC 28-20.1-02[8]], when a foreign judgment is properly registered in this state. Because this judgment was not so registered here, we need not decide whether resort to those procedures would enable a North Dakota court to modify another state's judgment for child support. *Compare Bloom v. Fyllesvold,* 420 N.W.2d 327, 330 (N.D.1988) ("[T]he hearing was on an 'order affecting a child support obligation,' and the trial court did not combine a withholding hearing with a modification hearing."). It is clear, as the Unit argues, that this support judgment "simply was not filed in a man-

ner which confers jurisdiction upon the trial court to modify its provisions."

We explained this process once before in the context of a North Dakota support judgment:

N.D.C.C. § 14-09-09.14(1) clearly limits the scope of a hearing to contest the issuance of an income withholding order to a determination of whether there was a "mistake of fact." In the absence of a mistake of fact, the court must order issuance of the income withholding order. Under N.D.C.C. § 14-09-09.14(2), the court may not consider an obligor's request for relief from a judgment or order "affecting a child support obligation," during a withholding hearing. N.D.C.C. § 14-09-09.14 thus distinguishes between a hearing to "contest the issuance of the income withholding order" (withholding hearing) and a hearing to seek "appropriate relief from a judgment or order affecting a child support obligation" (modification hearing). In a withholding hearing the court may deny the issuance of an income withholding order only if there has been a mis-

---

**7.** NDCC 14-12.1-24 says:

*Order of support.* If the responding court finds a duty of support it shall order the obligor to furnish support or reimbursement therefor in accordance with the provisions of section 14-09-09.7 and may subject the property of the obligor to the order. The court, upon a finding of a material change of circumstances relative to the obligor's discharge of obligations under any existing order for child support or decree of divorce, may modify the order for child support or alimony combined with child support, and order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to the order. A determination that a child who is the subject of a child support order is eligible for benefits furnished under subsection 18 or 20 of section 50-06-05.1 or chapter 50-09 or 50-24.1, or any substantially similar program operated by any state or tribal government, constitutes a material change of circumstances. The availability of health insurance at reasonable cost to a child who is the subject of a child support order constitutes a material change of circumstances. Support orders made pursuant to this chapter shall require that payments be made to the clerk of the court of the responding state. The court and prosecuting attorney of any county in which the obligor is present or has property

have the same powers and duties to enforce the order as have those of the county in which it was first issued. If enforcement is impossible or cannot be completed in the county in which the order was issued, the prosecuting attorney shall send a certified copy of the order to the prosecuting attorney of any county in which it appears that proceedings to enforce the order would be effective. The prosecuting attorney to whom the certified copy of the order is forwarded shall proceed with enforcement and report the results of the proceedings to the court first issuing the order.

**8.** NDCC 28-20.1-02 says:

*Filing and status of foreign judgments.* A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any district court or county court of any county of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the district court of any county of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court or county court of any county of this state and may be enforced or satisfied in like manner.

take of fact as to the identity of the obligor or an over-statement in the calculation of the amount of support stated to be owed. In a modification hearing any issue relevant to the underlying child support obligation may be addressed.

*Bloom,* 420 N.W.2d at 330. In this case, the trial court exceeded its powers by modifying the Nevada support judgment and denying income withholding at a withholding hearing when there was no mistake of fact or good cause.

█ Larry argues "the impossibility of [his] paying the amount requested," and that the law "allows the court to make a determination in accordance with what would be reasonable in North Dakota law as withholding." We disagree. Nothing in the income withholding statutes vests a North Dakota court with discretion to decide what support is due to a child in another state, or to decide whether income withholding should be carried out, absent a mistake of fact or good cause as those reasons are defined in the statutes on interstate income withholding to enforce child support. Therefore, we conclude that the order modifying the child support amount and denying income withholding in this case was in error.

We reverse the trial court's order. If and when Larry returns to employment in North Dakota, and in accordance with our statutes on interstate withholding, Larry's employer can be compelled to withhold income to pay this Nevada judgment for child support.

VANDE WALLE, C.J., LEVINE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.